UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

TERRY MAYS                              CIVIL ACTION NO. 09-cv-1536

VERSUS                                  JUDGE HICKS

WARDEN, LOUISIANA STATE                 MAGISTRATE JUDGE HORNSBY
PENITENTIARY

**REPORT AND RECOMMENDATION**

**Introduction**

A Caddo Parish jury convicted Terry Wayne Mays ("Petitioner") of second degree murder (life sentence) and armed robbery (50 years). His conviction and sentences were affirmed on direct appeal. State v. Mays, 612 So.2d 1040 (La. App. 2d Cir. 1993), writ denied, 619 So.2d 576 (La.). He also pursued a post-conviction application, which was denied. That decision was final in 1997. Petitioner waited more than 10 years before filing a second post-conviction application in state court. He now seeks federal habeas relief based on the issues presented in that second post-conviction application. For the reasons that follow, it is recommended that the petition be denied.

**Relevant Facts**

The trial evidence showed that Ervin Ford asked a friend, Keith Foster, to accompany him from Marshall, Texas to Shreveport, Louisiana. Ford testified that he was at first not aware of the purpose of the trip, but he learned that Foster was looking for a person known

as "Big Boy," from whom he wished to purchase drugs. The two men drove to the Mooretown section of Shreveport.

They stopped near an intersection at 1:00 a.m., where they encountered Petitioner and two companions, Robert Grant and Wendell Leshay. Foster, the driver, asked if the men knew Big Boy. Petitioner and Grant stood next to the driver's window, talking to Foster, and Grant tried to make Foster believe he had drugs for sale. Grant suddenly reached inside the car, turned off the ignition, and removed the key. Petitioner then pointed a sawed-off shotgun at Foster's head and demanded money from both men. The men surrendered their money and Foster's wallet. Petitioner then shot Foster in the left side of his neck, killing him.

Ford flagged down a policeman and was able to give descriptions of the men. He described the gunman as wearing unusual headgear, i.e., a cap with something underneath it, perhaps a second cap. Police received an anonymous tip that Petitioner and a man known as "Rah-Rah" had been involved in the shooting. The police were aware that Grant was known by that name. Ford identified Grant in a photo lineup as the man who removed the car keys. Police did not have a photo of Petitioner to use in a lineup, but they located Petitioner and Grant soon afterward. Petitioner's clothing and two caps matched Ford's description of the gunman. Ford viewed a live lineup the next day and identified Petitioner as the shooter. Leshay eventually cooperated with the police, led them to the shotgun, and testified at trial that Petitioner shot Foster. Caddo Parish coroner Dr. George M. McCormick,

II testified that he conducted an autopsy of the victim and that the victim died from a shotgun wound to the neck.

**State Post-conviction Proceedings**

It was learned after Dr. McCormick died in September 2005 that he did not always conduct all aspects of autopsies. An assistant coroner, Lisa Hayes, actually performed many of the autopsies about which McCormick testified in court. Petitioner's second post-conviction application attached evidence from an investigation of that matter, as well as a newspaper clipping about it. Petitioner argued that this was newly discovered evidence, had it been known by his attorneys, could have been used to effectively cross-examine Dr. McCormick about "certain things he was testifying to at trial." Petitioner also argued that he was entitled to relief from his murder and robbery convictions because the coroner gave perjured testimony. Tr. 1080-1100.

Dr. McCormick's role at the trial was fairly limited. He testified that he performed an autopsy on Foster, a 30-year-old black male, who had small change in his pocket but no wallet. The victim had a large shotgun wound at the lower jaw, about two inches in diameter, with indications the muzzle of the gun was either touching the skin or very close to it when fired. He said the shotgun pellets completely destroyed the first two vertebrae in the neck, fractured the base of the skull, and most of the pellets in the shot cup were found beneath the skull on the right side above the jaw. When asked if there was any question that the shotgun blast was what caused the victim's death, McCormick said there was "none whatsoever." He added that the pellets lacerated all the major arteries and veins in the left

side of the neck, causing hemorrhage which would have caused his death, in addition to the destruction of the spinal cord. Toxicology results showed no use of alcohol but consumption of cocaine within the prior 12 hours. Tr. 298-307.

The trial judge denied the post-conviction application, noting that (1) it would have been impossible for the prosecutor to provide defense counsel with the investigation report before trial since it did not exit until almost 15 years later, (2) it was unreasonable to believe that testimony a pathologist assistant may have conducted the autopsy about which McCormick testified would have resulted in a different verdict, and (3) Petitioner had not shown how the newly discovered evidence affected the coroner's findings about the cause of death of the victim. Tr. 1317-19.

The state appellate court denied a writ application, stating that the application was time-barred under the two-year limitations period and that Petitioner had not shown that the coroner did not perform the autopsy at issue. The court added that "such evidence does not relate to the applicant's involvement as the shooter in the crime, but relates to the cause of the victim's death which was never at issue at trial or on appeal." Tr. 1419. The Supreme Court of Louisiana denied writs without comment. Tr. 1567.

**Analysis of Claims in Federal Petition**

    **A. Introduction**

Petitioner's federal petition is likely subject to a timeliness defense that has been raised by the State, as well as a procedural bar defense based on the state court's alternative grounds of untimeliness in the last reasoned state court decision. The petition also lacks

merit. The lack of merit is the easiest to resolve on the current record without further delay, so that will be the focus here.

### B. State Court Procedural Errors

Petitioner begins his federal memorandum by listing issues such as whether the trial court erred in summarily denying his application, whether the state court decisions conflict with prior decisions, and other challenges to the adequacy of the post-conviction decisions and process. Mere errors in state post-conviction proceedings do not entitle a petitioner to federal habeas relief; such errors do not affect the validity of an underlying conviction or sentence. The federal court must find constitutional error at the trial or direct review level in order to issue the writ. Morris v. Cain, 186 F.3d 581, 585 n.6 (5th Cir. 1999) ("[O]ur circuit precedent makes abundantly clear that errors in state postconviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief.") and Duff–Smith v. Collins, 973 F.2d 1175, 1182 (5th Cir.1992) ("[I]nfirmities in state habeas proceedings do not constitute grounds for federal habeas relief. We look only to the trial and direct appeal.")

### C. Crawford

Petitioner next invokes Crawford v. Washington, 124 S.Ct. 1354 (2004). He argues that the autopsy reports were admitted into evidence and that he did not get the right to confront and cross-examine the person who *actually* performed the work behind the report. This claim fails for a number of reasons.

(1) Petitioner has offered nothing more than speculation that McCormick did not, in this case, perform the autopsy of the victim and author the report.

(2) Dr. McCormick referred to the autopsy report when he testified, but it does not appear the report was admitted into evidence. See McCormick's testimony and Exhibit list at Tr. 290.

(3) Petitioner did not present a Crawford argument in his post-conviction application, so he did not exhaust his state court remedies as required by 28 U.S.C. § 2254(b)(1).

(4) Crawford, to the extent Petitioner's claim relies on its particular holding, is not retroactive to cases that have already been reviewed on appeal. Whorton v. Bockting, 127 S.Ct. 1173 (2007).

### D. Brady Claim

Petitioner's "newly-discovered evidence" claim is briefed primarily in terms of state law, violations of which do not give rise to cognizable habeas claims. Petitioner makes a generic invocation of the Fourteenth Amendment of the United States Constitution, but he does not articulate the precise legal grounds of his constitutional claim. The best approximation of a federal claim based on the asserted facts would arise under Brady v. Maryland, 83 S.Ct. 1194 (1963), which held that suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material to guilt or punishment. The duty to disclose includes impeachment evidence. U.S. v. Bagley, 105 S.Ct. 3375 (1985).

The report that Petitioner complains prosecutors should have disclosed to his attorneys in 1991 did not exist until more than a decade later. Documents that do not exist at the time of trial are not Brady material. See U.S. v. Jones, 399 F.3d 640, 647-48 (6th Cir. 2005); U.S.

v. Mills, 334 Fed. Appx. 946 (11th Cir. 2009). The Brady obligation applies to evidence in the possession of the prosecution or others acting on the government's behalf in the case. The investigative report regarding Dr. McCormick does not meet that element.

Petitioner has also not shown that the report is material, which is generally the most difficult element for a petitioner to prove. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Cobb v. Thaler, 682 F.3d 364, 377 (5th Cir. 2012), citing Bagley. There is no dispute in the record that the victim was killed by a shotgun blast to the neck. There has never been an argument at trial or on appeal that there was another cause of death, nor have there been any other questions related to the issues about which Dr. McCormick testified. The state court rejected the claim for this reason.

Habeas relief is not available with respect to this claim unless the state court's adjudication involved an objectively unreasonable application of clearly established federal law as established by the Supreme Court. Renico v. Lett, 130 S.Ct. 1855, 1862 (2010); 28 U.S.C. § 2254(d). Brady's materiality standard is a general rule, meaning a wide range of reasonable applications exist. Cobb, 682 F.3d at 381. The state court's application of the Brady principles to the facts in this case was not an objectively unreasonable application of Brady. Rather, it was entirely reasonable based on the record, providing another reason habeas relief is not permitted with respect to this claim.

### E. Perjured Testimony

Petitioner's final claim that he briefs in his memorandum is that the coroner gave perjured testimony. The Due Process Clause of the Fourteenth Amendment forbids the prosecution to knowingly to use, or fail to correct, perjured testimony. Giglio v. U.S., 92 S.Ct. 763, 766 (1972); Napue v. Illinois, 79 S.Ct. 1173, 1178-79 (1959). To prove that the prosecution has denied him due process of law by relying on perjurious testimony, a petitioner must prove that (1) a witness for the state testified falsely; (2) the state knew the testimony was false; and (3) the testimony was material. Knox v. Johnson, 224 F.3d 470, 477 (5th Cir. 2000), citing Giglio, supra.

Petitioner offers allegations that the coroner testified falsely, but there is no supporting evidence that this happened in his case. And there is certainly no evidence the State knew that any of the coroner's testimony was false. The district attorney would not learn of the issues in the coroner's office until more than a decade later when an investigation was conducted. Also, for reasons similar to those given in discussion of the Brady claim, the testimony at issue was not material. The state court's rejection of this claim is not subject to being overturned under the standards of Section 2254(d), so habeas relief is not available on this claim.

Accordingly,

**IT IS RECOMMENDED** that the petition for habeas corpus be **denied**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days

from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 27th day of July, 2012.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE